**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandi Jo Abril, | No. CV-16-02912-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on October 30, 2012, alleging disability beginning March 1, 2011. (A.R. 13.) The claim was denied initially on February 27, 2013, and upon reconsideration on October 1, 2013. (*Id.*) Plaintiff then requested a hearing. (*Id.*) On October 19, 2013, Plaintiff, her representative, and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 41-73.) The ALJ issued a written decision three months later, finding Plaintiff not disabled within the meaning of the Social Security Act. (*Id.* at 13-31.) This became the Commissioner's final decision when the Appeals Council denied review. (*Id.* at 1-3.)

On August 30, 2016, Plaintiff sought review by this Court. (Doc. 1.) After receipt of the administrative record (Doc. 16), the parties fully briefed the issues for review (Docs. 19, 20, 23). For reasons stated below, the Court reverses the Commissioner's decision and remands for further proceedings.

## BACKGROUND

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2016, and that she has not engaged in substantial gainful activity since March 1, 2011. (A.R. 16.) At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, gastroesophagel reflux disease (GERD), irritable bowel syndrome (IBS), interstitial cystitis (IC), functional dyspepsia, vaginal spasms, endometriosis, polycystic ovarian syndrome, history of celiac disease, diagnoses of cervicalgia, and obesity. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments do not meet or equal the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 19.) At step four, the ALJ found that Plaintiff:

> has the [RFC] to perform light work . . . except [she] cannot climb ladders, ropes or scaffolds. [She] can occasionally climb ramps and stairs, . . . balance, stoop, crouch, kneel, and crawl. [She] should avoid concentrated exposure to extreme hot and extreme cold temperatures, wetness and humidity, and irritants, such as fumes, odors, dusts, and gasses, uses of hazardous machinery, and exposure to unprotected heights.

(*Id.* at 19-20.) The ALJ also found that Plaintiff is capable of performing her past relevant work as a cashier checker and cell phone sales representative. (*Id.* at 29.) Accordingly, the ALJ found Plaintiff not disabled. (*Id.* at 30.)

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## **DISCUSSION**

On appeal, Plaintiff challenges the ALJ's RFC determination, arguing that the ALJ improperly weighed her treating physicians' medical opinions and erred in rejecting her symptom testimony. Having reviewed the record and the parties' briefs, the Court concludes that the ALJ erred in discrediting Plaintiff's testimony and weighing the medical opinion of one of her treating physicians. Moreover, the ALJ's decision must be reversed because these legal errors are not harmless.

### **I. Weighing Treating Physicians' Opinions**

In weighing medical source opinions, the Ninth Circuit distinguishes among three

types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight generally should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). However, a treating physician's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2). Even where a treating physician's opinion is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

In support of her disability application, Plaintiff offered the opinions of Dr. Vu, Plaintiff's primary care physician, and Dr. Castillo, her treating pain management physician. Dr. Vu opined, among other things, that the symptoms of Plaintiff's IBS and IC cause her to be "off task greater than 21% of an 8-hour work day." (A.R. 1432-33.) Dr. Castillo opined that, due to her conditions, Plaintiff could: (1) lift no more than between 10 and 15 pounds, (2) carry less than ten pounds, (3) stand and/or walk less than 2 hours in an 8-hour workday, and (4) sit less than 2 hours in an 8-hour workday. (*Id.* at 1755-56.) He also opined that it was medically necessary for Plaintiff to alternate positions; that she needed a 15 minute rest when she changed position; and that her symptoms cause additional limitations, including abdominal pain, loss of concentration and short term memory, and disrupted sleep. (*Id.*) The ALJ assigned "little weight" to these opinions. (*Id.* at 27-28.)

Notably, the opinions of Drs. Vu and Castillo were contradicted by State agency medical consultants, who opined that Plaintiff could: (1) occasionally lift and carry 20 pounds; (2) frequently lift and carry more than 10 pounds; (3) stand and/or walk 6 hours

in an 8-hour workday; (4) sit 6 hours in an 8-hour workday; and (5) engage in previously completed work. (*Id.* at 88-89, 145-46.) Accordingly, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting Drs. Vu and Castillo's opinions. The ALJ satisfied this standard as to Dr. Vu, but not as to Dr. Castillo.

**A. Dr. Vu**

The ALJ discounted Dr. Vu's opinions because he found they were not consistent with the objective medical evidence. (*Id.* at 27.) As a general rule, "[t]he better an explanation a source provides for an opinion, the more weight [an ALJ] will give that opinion." 20 C.F.R. § 404.1527(d)(3). When this rule is applied to opinions rendered in a check-box form, the weight given depends on the consistency between the opinions and the treatment notes and medical record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014). Inconsistency with or lack of objective evidentiary support is a specific and legitimate reason for discounting medical opinion testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005).

Substantial evidence supports the ALJ's finding. For instance, Dr. Vu reports that Plaintiff is off task greater than 21% of the time, in part because she experiences five episodes of IBS daily, each lasting between thirty minutes and an hour. (A.R. 1432.) Although the medical record reflects that Plaintiff reported experiencing diarrhea, the records do not corroborate the frequency and severity opined to by Dr. Vu.[1] According to Dr. Vu's assessment, Plaintiff endures IBS episodes collectively lasting between 2.5 to 5 hours per day. Yet, the medical records concerning Plaintiff's IBS and diarrhea rarely note more than the mere existence of the symptom. The ALJ reasonably concluded that, if Plaintiff in fact suffers episodes lasting up to 5 hours a day, the medical records would reflect as much. Indeed, the Medical Assessment Form measures IBS by its frequency of

---

[1] The Court recognizes that Plaintiff testified before the ALJ that she experiences 10 IBS-episodes daily, with each episode lasting up to 30 minutes. Importantly, this testimony and Dr. Vu's opinion are belied by the medical records which do not demonstrate that Plaintiff reported such severe symptoms to Dr. Vu before.

- 5 -

episodes and duration of episodes. (*Id.* at 1432-33); *see also Ramirez v. Astrue*, 373 Fed. App'x 709, 710-11 (9th Cir. 2010) (noting that IBS is evaluated by frequency and severity of episodes). Notably, Plaintiff fails to cite treatment records supporting IBS symptoms of the magnitude opined to by Dr. Vu.[2]

Plaintiff asserts that the ALJ failed to consider whether Dr. Vu's opinions were supported by records related to Plaintiff's IC and obesity. (Doc. 19 at 9.) But Dr. Vu's assessment does not indicate that his opinions are based, in whole or in part, on Plaintiff's obesity. Moreover, his assessment makes only a passing reference to IC and fails to associate the condition with any of the opined-to limitations. The ALJ cannot be said to have erred for not considering impairments that Dr. Vu did not cite as the basis for his opinions.[3]

**B. Dr. Castillo**

The ALJ discounted Dr. Castillo's opinions because they were "quite conclusory," provided "very little explanation of the evidence relied on," and were not based on "positive objective clinical or diagnostic findings" (A.R. 27-28), which all are specific and legitimate reasons for doing so. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

---

[2] Plaintiff cites to *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015), for the proposition that summarizing medical evidence in support of a RFC finding is not the same as providing a legitimate reason for discounting a treating physician's opinion. (Doc. 19 at 7-8). *Brown-Hunter*, however, addresses whether a summary of medical evidence is an adequate basis for rejecting a claimant's symptom testimony, not a physician's opinion. The standard applied in *Brown-Hunter* is consistent with the rule that an ALJ cannot discredit the severity of symptoms testified to by a claimant when objective medical evidence demonstrates a basis for that symptom. In contrast, physicians are expected to offer opinions based on objective diagnostic findings or reported symptoms, both of which should be reflected in the medical record. Here, the medical record does not support Dr. Vu's opinions.

[3] To the extent that Plaintiff argues that the ALJ did not properly considered these impairments when reaching his non-disability determination, the Court likewise finds no error. The ALJ discussed and considered Plaintiff's IC and obesity. For example, at step two, the ALJ found Plaintiff's IC and obesity to be severe. (A.R. 16.) At step three, the ALJ held that Plaintiff's obesity was "not sufficiently severe to equal a listing, and do[es] not increase the severity of a coexisting or related impairment sufficiently to meet the requirements of a listing." (*Id.* at 20.) Finally, at step four, the ALJ discussed Plaintiff's IC at great length, summarizing the medical records, and finding that Plaintiff's "expressed desire to continue conservative treatment, rather than more aggressive treatment, suggests that [Plaintiff's] symptoms and limitations were not as severe as she alleged." (*Id.* at 23-24.)

(9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ's reasons, however, are not supported by substantial evidence. Unlike with Dr. Vu, where the medical record simply did not corroborate such severe limitations, the record contains significant medical evidence that Plaintiff suffered from severe, recurrent pain. (*See, e.g.*, A.R. 1077, 1080-81 (pain score ranging from 8 to 10 while on medication, 10 representing a person's highest pain level, and describing her abdominal pain as sharp and stabbing), 1678, 1680, 1683 (pain score of 9 out of 10 while on medication), 1684 (experiencing sharp and stabbing pain when moving), 1690 (experiencing no improvement in pain post-surgery, still suffering from "pins and needle pain"), 1691, 1694, 1697 (pain score ranging from 8 to 10 while on medication), 1698 (experiencing radiating pain).) In short, an examination of the entire record "shows that the ALJ has erred in characterizing statements and documents contained therein to reach [his] conclusion." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Because the reasons offered by the ALJ are not supported by substantial evidence, the ALJ erred in giving only "little weight" to Dr. Castillo's opinions.

**II. Weighing Plaintiff's Symptom Testimony**

In evaluating a claimant's testimony regarding subjective pain or other symptoms, the ALJ must engage in a two-step analysis. First, the ALJ determines whether the claimant presented objective medical evidence of an impairment that reasonably could be expected to produce some degree of the symptoms alleged. Second, if the claimant makes this showing and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The Court need not uphold all of the ALJ's reasons for discrediting a claimant, so long as substantial evidence supports the ALJ's decision. *See e.g.*, *Batson*, 359 F.3d at 1197.

Plaintiff testified that her impairments prevent her from working and finishing

school because of constant pain, discomfort, nausea, and vomiting. (A.R. 49-50.) The ALJ only partially credited this testimony. (*Id.* at 24.) In doing so, he found that Plaintiff's medically determinable impairments reasonably could be expected to cause her alleged symptoms and found no evidence of malingering. (*Id.* at 22.) The ALJ therefore was required to articulate clear and convincing reasons for discounting the testimony. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quotation and citation omitted); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").[4] The ALJ did not meet this standard.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms not entirely credible" because: (1) her testimony about her daily activities was inconsistent; (2) she has a history of drug use; and (3) she failed to comply with prescribed treatments. (A.R. 22-26.) The first and third are clear and convincing reasons; however, neither is supported by substantial evidence. *See Orn*, 495 F.3d at 639 (daily activities); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (non-compliance with treatment).

### A. Daily Activities

The ALJ concluded that Plaintiff's daily activities contradict her other testimony, asserting that "[t]he record reflects that [Plaintiff] has made inconsistent statements regarding matters relevant to the issue of disability. This discrepancy diminishes the persuasiveness of [Plaintiff's] subjective complaints and alleged functional limitations." (A.R. 24.) In support, the ALJ cites three examples: (1) social life; (2) exercise and walking habits; and (3) difficulty dressing.

---

[4] This Court has, on a prior occasion and in the context of weighing physician opinion evidence, questioned whether there is a meaningful, practical difference between the Ninth Circuit's "clear and convincing reasons" standard and the "specific and legitimate reasons" standard in light of the fact that all ALJ decisions must be supported by the same quantum of evidence. *Moore v. Comm'r of Soc. Sec. Admin.*, No. CV-16-03445-PHX-DLR, 2017 WL 6379920, at *4-5 (D. Ariz. Dec. 14, 2017).

First, the ALJ explained that, although Plaintiff "stated in her Function Report that she has 'no social life,' [Plaintiff] also acknowledged that she spends time with other people every day by texting or talking on the phone." (*Id.* at 25.) An ALJ, however, errs in reading a plaintiff's testimony so narrowly and literally. *McGee v. Colvin*, No. EDCV 14-2188 FFM, 2016 WL 927137, at *4 (C.D. Cal. Mar. 10, 2016); *Kaufman v. Sullivan*, CIV. 91-241-S, 1992 WL 717818, at *7 (D. N.H. Feb. 3, 1992) ("A fair reading of claimant's testimony reveals the ALJ's [literal] construction to be no more than clumsy sophistry."). Reading symptom testimony too literally often leads one to see inconsistencies where none actually exist. This is the case here. A fair reading of "no social life" does not render all communication with others, even text message or phone call, contradictory.

Second, the ALJ noted that Plaintiff testified inconsistently about her ability to exercise. In support, the ALJ contrasted Plaintiff's testimony that she had not "done any walking for exercise" since 2011, with statements made to her treating providers in 2014 that she "tries to walk daily" and "walks around her cul-de-sac when it is not too hot." (A.R. 24-25.) Although these statements contradict each other, the ALJ failed to explain how either statement is inconsistent with Plaintiff's allegation that she is able to walk only short distances before needing to stop and rest. (*Id.* at 21.) Instead, it appears that the ALJ cited these contradictory statements as evidence that Plaintiff is exaggerating or being untruthful. But, as previously noted, the ALJ made no finding of malingering in this case, and the Court cannot affirm for a reason upon which the ALJ did not rely.

Finally, the ALJ found that Plaintiff's reported inability to dress herself and limited ability to use her hands and fingers is inconsistent with objective medical evidence. (*Id.* at 25.) In support, the ALJ points to multiple observational notes in which Plaintiff was reported as having adequate strength, range of motion, and dexterity in her upper extremities. Plaintiff's reported, however, that her limitations are not a result of lack of strength or dexterity. Rather, they stem from her tremors she experiences as a side effect to one of her medications. (*Id.* at 326; Doc. 23 at 10.) The ALJ therefore

erred by relying on evidence that is not relevant to reason Plaintiff reported an inability to dress.

### B. Prior Drug Use

The ALJ also found Plaintiff less credible because of her history of drug use. In support, the ALJ offered three pieces of evidence: (1) at age 15 Plaintiff began using marijuana; (2) at age 24 Plaintiff was placed on probation after being charged with possession of marijuana; and (3) the record indicates that Plaintiff was abusing drugs. (A.R. 26.) Although the ALJ cites evidence of Plaintiff's prior drug use, he fails to connect any of these facts with specific symptoms Plaintiff reported. SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16. 2016) (noting that "adjudicators must limit their evaluations to the individual's statements about [] her symptoms and the evidence in the record that is relevant to the individual's impairments").[5] Prior drug use in and of itself is not a clear and convincing reason for impugning Plaintiff's credibility. That is to say, absent a more thorough explanation, Plaintiff's drug use is not a clear and convincing reason for discounting the credibility of her symptom testimony.[6] *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006).

### C. Compliance with Treatment

Finally, the ALJ found that "the claimant failed to comply with prescribed medications." (A.R. 26.) "An individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed *and there are no good reasons for this failure*." SSR 96-7p (emphasis added). The ALJ highlighted three instances of noncompliance: (1) failure to take asthma medicine as prescribed; (2) failure to respond to requests to return to physical therapy; and (3) discharge of Plaintiff by a pain management specialist for not taking her

---

[5] Although SSR 16-3 was issued after the ALJ's decision in this case, the Court finds it instructive as it "clarifies rather than changes existing law." *See Radha v Colvin*, No. 15-CV-1400-PHX-ESW, 2016 WL 4253960, at *4 (D. Ariz. Aug. 11, 2016).

[6] The Court notes that Defendant failed to respond to Plaintiff's challenges regarding her prior drug use (Doc. 20 at 5-9), which suggests that Plaintiff's objection may be well taken.

- 10 -

medications as prescribed and taking medications not prescribed by the office. (A.R. 22-23, 26.) The ALJ concluded that Plaintiff's noncompliance "demonstrates a possible unwillingness to do that which is necessary to improve her condition. It may also be an indication that her symptoms are not as severe as she purports." (*Id.* at 26.)

The ALJ failed, however, to ask Plaintiff why she was noncompliant. (*Id.* at 41-73.) The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288. Here, by not asking Plaintiff about the isolated instances of noncompliance with recommended treatment, the ALJ failed to fully and fairly develop the record. Further, without such information, the ALJ necessarily could not determine whether any "good reasons" existed for Plaintiff's noncompliance.[7] For the aforementioned reasons, the ALJ failed to provide clear and convincing reasons supported by substantial evidence for finding Plaintiff's testimony less credible.

**III. Scope of Remand**

Having determined that the ALJ erred, the Court has discretion to remand the case for further development of the record, or to credit the improperly rejected evidence as true and remand for an award benefits. *See Reddick*, 157 F.3d at 728. With that said, "[a]n automatic award of benefits in a disability case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). In deciding whether to remand for an award of benefits, the Court considers the following three factors: (1) did the ALJ fail to provide legally sufficient reasons for rejecting evidence, (2) has the record has been fully developed and would

---

[7] Notably, the medical records suggest there might have been a good reason for Plaintiff's apparent noncompliance. For example, the ALJ isolates a single act of Plaintiff's non-compliance with her asthma medicine. On September 8, 2010, Plaintiff had ceased taking her Advair. In the provider assessment, it was reported that Plaintiff "cannot pay for Advair and will wait for [patient] assistance" to resume the medicine. (A.R. 501.) On September 16, 2010, it was noted in the provider assessment plan that provider was able to get Plaintiff samples of Advair and that she had submitted paperwork for patient assistance for the medicine. (*Id.* at 495.) Plaintiff resumed treatment on Advair on September 21, 2010 after her patient assistance was approved. (*Id.* at 490.)

- 11 -

further proceedings serve no useful purpose, and (3) is it clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited? *Triechler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014).

The Court finds that the record has not been fully developed. There remain outstanding issues of fact that need to be resolved through further proceedings, for example: whether good cause exists for Plaintiff's discharge from pain management treatment for not taking her medication as prescribed and taking medications not prescribed by the office. Although there is a fair amount of criticism of remanding for the purpose of allowing the ALJ to have a do-over, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), given that Plaintiff's primary limitations arise from chronic abdominal pain, her alleged non-compliance with pain management casts serious doubt as to whether she is disabled. *Leon*, 880 F.3d at 1044. Therefore, the Court remands for further administrative proceedings, and directs the ALJ to fully develop the record on Plaintiff's non-compliance with recommended treatment.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED** and the case **REMANDED** for further proceedings.

Dated this 21st day of March, 2018.

Douglas L. Rayes
United States District Judge